# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF PUERTO RICO

FRANCISCO REYES-VEJERANO,
  Petitioner,

v.                                              Civil No. 97-1652 (HL)
                                                Crim. No. 94-016 (HL)

UNITED STATES OF AMERICA,
  Respondent.

## OPINION AND ORDER

Before the Court is a petition for postconviction relief under 28 U.S.C. § 2255 filed

by Francisco Reyes-Vejerano ("Reyes"). The five-count superseding indictment in his

criminal case charged him with conspiring to possess heroin with intent to distribute and

conspiring to make false statements in order to obtain a passport, in violation of 18 U.S.C.

§§ 2 & 1542 and 21 U.S.C. §§ 841(a)(1) & 846.[1] Two other individuals were charged

along with Reyes. One of them, Jaime Ocampo, pled guilty. Reyes and the other

defendant, Wilfredo Jiménez Rodríguez ("Jiménez"), went to trial and were found guilty.[2]

Reyes was sentenced to 188 months and a $50,000 fine.[3] He appealed, and on December

1, 1995, the First Circuit affirmed his conviction in an unpublished opinion. *See United*

*States v. Jiménez Rodríguez*, 70 F.3d 1253, 1995 WL 709639 (1st Cir. 1995).

---

[1] Crim. no. 94-016 (HL), docket no. 64.

[2] Crim. no. 94-016 (HL), docket nos. 101 & 102.

[3] Crim. no. 94-016 (HL), docket no. 146.



AO 72A
(Rev.8/82)



Civil No. 97-1652 (HL)                         2
Crim. No. 94-016 (HL)

Reyes then filed the present petition.  He claims that he was denied his Sixth

Amendment right to effective assistance when his trial attorney, Luis Rafael Rivera

("Rivera"), failed to do an adequate pretrial investigation of the case; made an improper

opening statement; failed to object to inadmissible evidence presented by the Government;

failed to move for a severance;  and failed to let Reyes testify in his own defense.  Reyes

further claims that his trial attorney was being investigated by the Government and that this

created a conflict of interest, which was why Rivera did not let Reyes testify.  He also

bases his petition on the claims that he was convicted with perjured testimony, that the

Government failed to disclose *Brady* material, and that Carmen Toledo, the Government's

chief witness, received illegal benefits, as provided in *United States v. Singleton*, 144 F.3d

1343 (10th Cir. 1998).  The Court held an evidentiary hearing on this petition, during

which Reyes and Rivera both testified.  The parties have briefed these issues, and the

Court is now ready to rule.


## DISCUSSION

### *1.    Claim of improper pretrial investigation*

The Sixth Amendment guarantees a criminal defendant effective assistance of

counsel in order to protect that defendant's fundamental right to a fair trial.  *Strickland v.*

*Washington*, 466 U.S. 668, 684-85, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984).  The

Constitution does not guarantee a defendant a perfect or successful defense; rather, he is

Civil No. 97-1652 (HL)                          3
Crim. No. 94-016 (HL)

guaranteed "'reasonably effective assistance under the circumstances then obtaining.'"

*Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993) (quoting *United States v. Natanel*,

938 F.2d 302, 309-10 (1st Cir. 1991)). A court should evaluate the challenged conduct not

with the benefit of hindsight, but from the attorney's perspective at the time of the trial.

*Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Lema*, 987 F.2d at 51.

    A petitioner must show, first, that his counsel's performance was deficient and,

second, that this deficient performance prejudiced the defense. *Strickland*, 466 U.S. at

687, 104 S.Ct. at 2064; *Bucuvalas v. United States*, 98 F.3d 652, 658 (1st Cir. 1996);

*Bonneau v. United States*, 961 F.2d 17, 20 (1st Cir. 1992). The petitioner has the burden

of proving both prongs of this test, and the burden is a heavy one. *Bucuvalas*, 98 F.3d at

658. An attorney's performance is deficient if it is "'so inferior as to be objectively

unreasonable.'" *Id.* (quoting *United States v. McGill*, 11 F.3d 223, 226 (1st Cir. 1993)).

The petitioner must show that, but for his counsel's deficient performance, the outcome

would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *United States*

*v. Hart*, 933 F.2d 80, 83 (1st Cir. 1991); *Carsetti v. Maine*, 932 F.2d 1007, 1012 (1st Cir.

1991). He must show that his counsel's errors were so serious that they deprived him of a

fair trial, a trial whose result is reliable. *United States v. Ademaj*, 170 F.3d 58, 64 (1st Cir.

1999). There is a strong presumption that the counsel's performance comes within the

wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S.Ct. at

2065. The defendant must overcome the presumption that his counsel's performance could

Civil No. 97-1652 (HL)                4
Crim. No. 94-016 (HL)

"'be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101,

76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). The court's scrutiny of the attorney's

performance must be highly deferential. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

      Reyes claims that his attorney was ineffective at the pretrial stage when he failed to

interview or subpoena Lourival Quiñones, Priscila Figueroa, José Soto Ruiz ("Soto"), and

Carmen Toledo's brother. Reyes claims that these individuals would all have provided

testimony contradicting Toledo's version of the incidents or would have otherwise

demonstrated her lack of credibility. Additionally, Toledo testified at trial that she met

with Reyes and Ocampo in Vieques to plan a drug-smuggling trip.[4] Reyes claims that if

Rivera had gone to Vieques to investigate, he would have discovered that Reyes has never

been in Vieques, and the fruits of this investigation could then have been used to further

discredit Toledo. Finally, Reyes also argues that if Rivera had fully investigated Toledo's

use of false identifications, he would have discovered that it was Toledo herself who

obtained her false driver's license – and not Ocampo, as she testified – and that she used

her false identifications primarily for the purpose of making numerous fraudulent credit

purchases, and not for drug smuggling, as she testified. All this evidence, Reyes asserts,

could have been presented to discredit Toledo.

-----------------

[4] Crim. no. 94-016 (HL), trial transcript, docket no. 119, at 105-08.

Civil No. 97-1652 (HL)                    5
Crim. No. 94-016 (HL)

At the evidentiary hearing, Rivera testified as to the investigation and preparation he

did for Reyes' trial.  Rivera stated that he did not pursue an investigation of how Toledo

obtained a false driver's license because she had admitted that it was false.[5]  He did

interview Toledo's brother, but he was unwilling to testify.[6]   He also interviewed Toledo's

mother.[7]  Rivera also spoke with Soto, but he was scared to testify.  Rivera was further

concerned that calling Soto as a witness would open the door to allegations of drug use by

Reyes.[8]  After Rivera interviewed Toledo, he moved for a continuance of the trial date to

allow him to subpoena Quiñones as a witness, but the Court denied the request.[9]

Additionally, Rivera located and interviewed Toledo's estranged husband, Luis

Noel de Jesús, and had him testify that Toledo had a reputation for lack of truthfulness,

that her testimony that she had not used drugs was false, and that she had fraudulently

filled out an application for a car loan.[10]  Although Rivera did not go to Vieques, he did

---

[5] Civil no. 97-1652 (HL), evidentiary hearing transcript, at 173.

[6] Civil no. 97-1652 (HL), evidentiary hearing transcript, at 145-46.

[7] Civil no. 97-1652 (HL), evidentiary hearing transcript, at 141.

[8] Civil no. 97-1652 (HL), evidentiary hearing transcript, at 166-68.  The transcript refers to Soto's first name as "Alicea."  Reyes in his brief refers to him as "Luis."  The Court assumes that "Alicea" is a typographical error and that Alicea Soto and Luis Soto are references to the same person.

[9] Crim. no. 94-016 (HL), docket no. 75.

[10] Civil no. 97-1652 (HL), evidentiary hearing transcript, at 146-47;  Crim. no. 94-016 (HL), trial transcript, docket no. 119, at 448-56.

Civil No. 97-1652 (HL)                    6
Crim. No. 94-016 (HL)

track down Sara Luz Velázquez, who lives in Vieques and whose identity Carmen Toledo

assumed in her false identifications.  Rivera flew Velázquez to San Juan and presented her

testimony to state that she did not know Reyes and had never seen him in Vieques.  She

testified to contradict Toledo's version as to how she obtained her false identification.[11]

Rivera also presented Ocampo, who testified that Toledo fraudulently used his name to try

to purchase an automobile, that he never met with Reyes in Vieques, and that Reyes did

not have anything to do with the drug importation activities in which Ocampo had been

involved.[12]

        Shortly after Rivera entered the case, he met with Reyes to discuss a list that Reyes

had prepared of twenty tasks which he wanted Rivera to do in preparation for the trial.[13]

For sixteen of the twenty tasks, Rivera testified that he was able to accomplish all or some

of them.[14]  Of the other four, Rivera concluded that one was unnecessary,[15] and another

would have required risky investigative work in a dangerous neighborhood.[16]

---

[11] Civil no. 97-1652 (HL), evidentiary hearing transcript, at 143-45; Crim. no. 94-016 (HL),
trial transcript, docket no. 119, at 467-71.

[12] Crim. no. 94-016 (HL), trial transcript, docket no. 119, at 474-507.

[13] Civil no. 97-1652 (HL), evidentiary hearing transcript, at 141; evidentiary hearing exhibit
7.

[14] Civil no. 97-1652 (HL), evidentiary hearing transcript, at 141-54.

[15] Civil no. 97-1652 (HL), evidentiary hearing transcript, at 142.

[16] Civil no. 97-1652 (HL), evidentiary hearing transcript, at 147-48.

Civil No. 97-1652 (HL)                    7
Crim. No. 94-016 (HL)

      Counsel for a criminal defendant must make a reasonable investigation in the

preparation of his case. *Kenley v. Armontrout*, 937 F.2d 1298, 1304 (8th Cir. 1991).

Counsel's assistance will be found to be ineffective if he has performed little or no

investigation into the case. *Id.* Generally, a finding of ineffective assistance will be based

on a failure to investigate where the evidence which the investigation would have produced

would have made the defendant's conviction nearly impossible. *Passos-Paternina v.*

*United States*, 12 F.Supp.2d 231, 236 n.4 (D.P.R. 1998), *aff'd* 201 F.3d 428 (1st Cir. 1999)

(Table case).

      In the present case, the testimony at the evidentiary hearing by Rivera – who the

Court finds to be a credible witness – indicates that he did a reasonable investigation and

preparation for the trial. The record does not indicate that he did little or no investigation.

The gist of Reyes' allegations of Rivera's improper investigation is that he did not

investigate certain matters which, according to Reyes, would have produced evidence to

discredit Toledo. It may be true that Rivera did not fully investigate and develop the points

to which Reyes alludes in his petition. However, the record clearly demonstrates that

Rivera did investigate other matters and presented witnesses to discredit Toledo.

Furthermore, at trial Rivera vigorously cross-examined Toledo by questioning her on,

among other things, fraudulent loan applications, criminal investigations of her for drug

Civil No. 97-1652 (HL)                    8
Crim. No. 94-016 (HL)

dealings in New York, and how she obtained her false identifications.[17]  Rivera's

investigations and trial tactics attempted to discredit Toledo.  Reyes claims that this result

would have been achieved by the investigations that Reyes alleges that Rivera did not do.

Both the steps which Reyes says should have been taken and the steps which Rivera

actually took were viable means of reaching the same result.  A court's determination of

whether an attorney's performance constituted ineffective assistance does not require it to

second-guess which of two viable strategies would have been more likely to succeed.  A

criminal defendant is entitled only to "'reasonably effective assistance under the

circumstances then obtaining.'"  *Lema*, 987 at 51 (quoting *Natanel*, 938 F.2d at 309-10).

    Here, the record indicates that Rivera's performance on these matters was

reasonably effective.  The fact that the tactics which Reyes proposes might have proved

more successful is not enough to demonstrate that Rivera's performance was ineffective.

A court does not evaluate an attorney's conduct with the benefit of hindsight, but from the

attorney's perspective at the time of the trial.  *Strickland*, 466 U.S. at 689, 104 S.Ct. at

2065;  *Lema*, 987 F.2d at 51.  Rivera entered this case in early February 1994, and the trial

was held in mid-April of that same year.[18]  Thus, he had a little over two months to

investigate and prepare for trial.  In the time he had for preparation, Rivera had to make

---

    [17] Crim. no. 94-016 (HL), trial transcript, docket no. 119, at 159-244.

    [18] Civil no. 97-1652 (HL), evidentiary hearing transcript, at 144; Crim. no. 94-016 (HL), docket no. 9.

Civil No. 97-1652 (HL)                    9
Crim. No. 94-016 (HL)

decisions on which tactics to use and which matters to investigate.  The fact that he did not

dedicate his time on the matters which Reyes now claims he should have does not

constitute ineffective assistance, given the fact that Rivera did dedicate his time on other

legitimate tactics and matters.


      2.      *Claims of a denial of the right to testify and of a conflict of interest*

      Reyes also bases his claim of ineffective assistance on allegations that Rivera did

not let him testify in his own defense.  Reyes also claims that he was the victim of a

conflict of interest involving Rivera.  Specifically, Reyes alleges that at the time of the trial

Rivera was under investigation for his own involvement with individuals who were

charged in other cases with drug dealing; that Rivera did not let Reyes testify because he

feared his own involvement would be revealed during Reyes' testimony; and that Rivera

did not aggressively defend Reyes for fear that a successful defense would incur the wrath

of the Government and lead to Rivera's being indicted in retaliation.

      A criminal defendant's claim that his own counsel violated his right to testify on his

behalf is properly viewed as a claim of ineffective assistance of counsel.  *United States v.*

*Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992).  Absent evidence of coercion, legal advice

concerning the defendant's right to testify does not constitute a violation.  *Lema*, 987 F.2d

at 52.  In the present case, both Reyes and Rivera testified at the evidentiary hearing on

this issue.  At the hearing Reyes averred that he insisted that he be allowed to testify, but

Civil No. 97-1652 (HL)                    10
Crim. No. 94-016 (HL)

that Rivera prevented him from doing so.[19]  Rivera admitted that Reyes wanted to testify.

However, Rivera stated that he counseled Reyes against testifying because putting him on

the stand would pose the risk of revealing that Reyes was extremely wealthy, which could

be misconstrued by a jury; that he had close relationships with other individuals who had

been charged with drug trafficking; and that he was Colombian, which could also be

misconstrued by a jury.[20]  Rivera further stated that he convinced Reyes not to testify and

that it was Reyes who decided not to take the stand.  Rivera denied that he coerced or

otherwise prevented Reyes from testifying.[21]  The Court finds Rivera to be the more

credible witness on this issue.  By contrast, the Court finds that Reyes' testimony at the

hearing to be lacking in credibility.  The reasons that Rivera mentioned for advising Reyes

not to testify constitute legitimate strategy concerns.  The scenario that Rivera portrays

strikes the Court as being a much more accurate portrayal of what happened during the

trial.

Reyes also argues that Rivera had a conflict of interest and that this motivated him

to prevent Reyes from testifying.  A defendant's Sixth Amendment right to effective

assistance of counsel is violated when an actual conflict of interest adversely affects his

---

[19] Civil no. 97-1652 (HL), evidentiary hearing transcript, at 48-53.

[20] Civil no. 97-1652 (HL), evidentiary hearing transcript, at 12-14.

[21] Civil no. 97-1652 (HL), evidentiary hearing transcript, at 14-15.

Civil No. 97-1652 (HL)                                11
Crim. No. 94-016 (HL)

lawyer's representation. *Bucuvalas*, 98 F.3d at 656. To establish a conflict of interest, the

defendant must show that (1) there was a plausible alternative defense strategy that his

attorney could have pursued and (2) this alternative tactic was "inherently in conflict with

or not pursued due to the attorney's other loyalties or interests." *Familia-Consoro v.*

*United States*, 160 F.3d 761, 764 (1st Cir. 1998); *Bucuvalas*, 98 F.3d at 656; *United*

*States v. Soldevila-Lopez*, 17 F.3d 480, 486 (1st Cir.1994). When an alleged conflict of

interest is at issue, the defendant need not establish actual prejudice. *Bucuvalas*, 98 F.3d at

656.

        A merely theoretical or speculative conflict of interest will not be sufficient to

demonstrate a Sixth Amendment violation. *Soldevila- Lopez*, 17 F.3d at 487. The

defendant must show that his attorney "actively represented conflicting interests." *Cuyler*

*v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980); *Bucuvalas*,

98 F.3d at 657; *see also Carey v. United States*, 50 F.3d 1097, 1100 (1st Cir.1995) ("the

defendant must demonstrate that the alleged conflict is more than 'some attenuated

hypothesis having little consequence to the adequacy of representation'") (quoting *Brien v.*

*United States*, 695 F.2d 10, 15 (1st Cir.1982)). The question of whether a lawyer had an

actual conflict which adversely affected the quality of his performance is intensely

fact-bound, and it will often turn on the exact details of the alleged conflict, including the

action taken by counsel, the explanations for his conduct, and the credibility of the counsel

and the defendant. *Familia-Consoro*, 160 F.3d at 765.

Civil No. 97-1652 (HL)                    12
Crim. No. 94-016 (HL)

In the present case, Reyes claims that Rivera's allowing him to testify would have

constituted a plausible alternative strategy.  As the Court found above, however, the record

does not support a finding that Rivera prevented Reyes from testifying.  The Court will

consider Reyes' argument to be that Rivera's counseling him not to testify would have

constituted a plausible alternative strategy.  Reyes must also show that this conduct was in

conflict with or not pursued due to Rivera's other interests. *See id.* at 764.  Reyes makes

much of the fact that Rivera is mentioned in a Drug Enforcement Administration report of

investigation for a case that was being investigated and prosecuted around the same time as

Reyes' case.  The report indicates that Rivera has a "NADDIS" identification number,

which is apparently used to keep track of individuals whose names appear in DEA

reports.[22]  The Government has submitted under seal other DEA investigation reports that

also mention Rivera.[23]  The Court has reviewed these reports.  Many of them contain

hearsay.  They do not constitute evidence sufficient to establish a conflict of interest.  It

should come as no surprise that an attorney who represents individuals charged with drug

trafficking is mentioned in DEA reports investigating these individuals.  Moreover, the

---

[22] Civil no. 97-1652 (HL), evidentiary hearing exhibit 2.

[23] Civil no. 97-1652 (HL), docket no. 15.

Civil No. 97-1652 (HL)                     13
Crim. No. 94-016 (HL)

mere fact that an individual has a NADDIS number does not mean that that individual is

being investigated by the DEA.[24]

Rivera's hearing testimony – which the Court again finds to be credible – further

refutes the notion that there was a conflict of interest.  He testified that although he did not

have a good relationship with the DEA, he was unaware that he was the subject of an

investigation by the agency; that he was not concerned by the information in the report

which Reyes has presented; and that he tried Reyes' case to the best of his abilities.[25]

Based on this testimony, along with the record as a whole, the Court concludes that there is

not evidence to establish that Rivera's advice to Reyes that he not testify was caused by a

conflict of interest.[26]

 

    3.    *Claims regarding Rivera's performance at trial*

        *a.*    *Opening statement*

Reyes also makes a series of claims of ineffective assistance based on Rivera's

performance at trial.  The Court addresses each claim in turn.  Reyes first argues that

---

[24] Civil no. 97-1652 (HL), Court's evidentiary hearing exhibit I.

[25] Civil no. 97-1652 (HL), evidentiary hearing transcript, at 27-33.

[26] Reyes also argues that Rivera did not try to win Reyes' case for fear of drawing the ire of the Government and an indictment against him.  For the same reasons that the Court discussed above denying Reyes' conflict of interest argument as to his allegation that Rivera counseled him not to testify, the Court also denies this argument.

Civil No. 97-1652 (HL)                14
Crim. No. 94-016 (HL)

Rivera's opening statement was deficient when he told the jury that it was "our

responsibility to put out some witnesses for you who will clear a lot of facts that were

elicited here through those government witnesses" and that "the defense doesn't have to

prove that this person is innocent."[27]  Reyes claims that these comments incorrectly stated

the burden of proof and implied to the jury that he was in fact guilty.  The Court finds that

the second comment by Rivera is a not an entirely incorrect statement of the burden.  At

any rate, the Court instructed the jury at the beginning of the trial that the Government has

the burden of proving the defendants' guilt beyond a reasonable doubt.[28]  In its closing

instructions, the Court again mentioned this standard repeatedly.[29]

There is a presumption that jurors follow the instructions they are given.

*Richardson v. Marsh*, 481 U.S. 200, 206, 211, 107 S.Ct. 1702, 1707, 1709, 95 L.Ed.2d 176

(1987); *Arthur D. Little, Inc. v. Dooyang Corp.*, 147 F.3d 47, 53 (1st Cir. 1998); *United*

*States v. Magana*, 127 F.3d 1, 6 (1st Cir. 1997).  Thus, the Court must presume that the

jury in this case followed the Court's instruction on the proper standard of proof.  Reyes

has not proffered any reason for the Court to presume otherwise.

---

[27] Crim. no. 94-016 (HL), trial transcript, docket no. 119, at 444-45.

[28] Crim. no. 94-016 (HL), trial transcript, docket no. 119, at 12, 19-20.

[29] Crim. no. 94-016 (HL), trial transcript, docket no. 119, at 632-33, 638, 648-52, 657.

Civil No. 97-1652 (HL)                 15
Crim. No. 94-016 (HL)

    *b.    Failure to object to 404(b) evidence*

Reyes also argues that Rivera was ineffective when he failed to object in two instances to Toledo's testimony. In the first instance, Toledo stated that she participated in a drug shipment with a man to whom Reyes had introduced her.[30] In the second, she testified that another drug transaction fell through when she was unable to obtain her passport. She was making the arrangements to get it while she went with Reyes to a pub.[31] Reyes claims that this testimony should have been objected to pursuant to Evidence Rule 404(b).

The mere failure to object to evidence is not enough to show ineffective assistance; the petitioner must also show that he suffered prejudice as a result of his counsel's silence. *Atkins v. Attorney General of Alabama*, 932 F.2d 1430, 1432 (11th Cir. 1991); *United States v. Andiarena*, 823 F.2d 673, 679 (1st Cir. 1987). This showing will be difficult to establish when the remaining evidence is enough to make out a strong case against the defendant. *Cf. Atkins*, 932 F.2d at 1432-33 (When the other evidence is not overwhelming, the inadmissible evidence may prejudice the defendant's trial). In the present case, the two anecdotes which Reyes claims were inadmissible under Rule 404(b) constituted, at most, marginal evidence in support of the Government's case. Even if the Court assumes that

---

[30] Crim. no. 94-016 (HL), trial transcript, docket no. 119, at 101-02.

[31] Crim. no. 94-016 (HL), trial transcript, docket no. 119, at 158.

Civil No. 97-1652 (HL)                16
Crim. No. 94-016 (HL)

this testimony should have been stricken, it represents a small portion of all the evidence

which the prosecution presented in its case against Reyes.  Reyes has not shown that

allowing this testimony prejudiced his case and caused him to be found guilty.  Moreover,

although Rivera did not object to these specific parts of Toledo's testimony, he vigorously

attacked her overall credibility on cross-examination, with his own witnesses, and in his

closing.  The fact that he failed to object to these two portions of her testimony does not

constitute ineffective assistance.  *Cf. United States v. Kellum*, 42 F.3d 1087, 1095 (7th Cir.

1994) (Failure to object to witnesses' testimony was not ineffective assistance, especially

in light of counsel's vigorous attack in closing of the credibility of those same witnesses).[32]


        c.      *Failure to object to other evidence*

        Reyes points to other examples of evidence which, he argues, should not have been

admitted.  One such instance was DEA Agent Héctor Ortíz, who testified on Toledo's

cooperation with the Government in an undercover operation involving individuals who

had nothing to do with Reyes' case.[33]  Reyes argues that this testimony constituted

improper bolstering of Toledo's credibility and that Rivera should have objected to it.

_____

    [32] On direct appeal, Reyes challenged the Government's presentation of this testimony.
*See* Civil no. 97-1652 (HL), docket no. 12, Appellate brief, at 22-24.  In its opinion, the First
Circuit summarily disposed of this argument. *See Jimenez-Rodríguez*, 70 F.3d 1253, 1995 WL
709639, at *5.

    [33] Crim. no. 94-016 (HL), trial transcript, at 308-14.

Civil No. 97-1652 (HL)                    17
Crim. No. 94-016 (HL)

Even if the Court assumes that such an objection would have been sustained, Rivera's

failure to object does not constitute ineffective assistance. In his cross-examination of this

witness, Rivera made the point that Reyes had no involvement whatsoever in the

undercover operation about which Agent Ortíz testified.[34] Additionally, as noted above,

Rivera used other tactics to attack Toledo's credibility. Moreover, Reyes has not shown

that this testimony prejudiced his case. Rivera's failure to object to Ortíz' testimony was

not ineffective assistance.

    Reyes also points to the Government's use of the transcript from Jaime Ocampo's

change of plea hearing to impeach Ocampo.[35] He argues that Rivera failed to prevent the

use of this transcript. However, Rivera *did* object to the Government's use of the

transcript, and the Court gave the jury a limiting instruction on its use.[36] Rivera's handling

of this issue was not deficient or so inferior as to be objectively unreasonable. This was

not ineffective assistance.

    Lastly, Reyes argues that Rivera should have objected to the testimony of Customs

agent Jorge Calderón who testified that Toledo mentioned Reyes' name when she was first

detained. Calderón then called his supervisor, who in turn contacted the U.S. Attorney's

---

[34] Crim. no. 94-016 (HL), trial transcript, at 315.

[35] Crim. no. 94-016 (HL), trial transcript, at 516-17, 523-27.

[36] Crim. no. 94-016 (HL), trial transcript, at 517-23, 527-28.

Civil No. 97-1652 (HL)                     18
Crim. No. 94-016 (HL)

Office.  Calderón's supervisor was told that there was a case pending against Reyes.

Reyes argues that Rivera should have objected to this reference to him in another case

because it was hearsay, highly prejudicial, and inaccurate.  Reyes claims that in reality the

Government had pending only an in rem case against properties owned by Reyes.  The

Court finds that the failure to object to this passage was not a deficient performance.  This

was merely a brief mentioning of Reyes, and the permitting of this testimony was not so

prejudicial as to alter the outcome of the case.  In fact, an objection could have been

counterproductive by drawing the jury's attention to the in rem case.  The failure to object

was not ineffective assistance.


             d.      *Failure to move for a severance*

        Reyes' next argument is that Rivera should have moved to sever his case.  He

asserts that had his case been severed, his co-defendant Jiménez would have testified that

he did not know Reyes and that he did not engage in any drug trafficking with him.  Reyes

argues that Jiménez would have impeached Toledo's testimony.  Under certain

circumstances, a court may sever one defendant's case to allow for a co-defendant to

testify on his behalf.  *See United States v. Smith*, 46 F.3d 1223, 1231 (1st Cir. 1995).  The

general rule in federal court, however, is that defendants who are indicted together should

be tried together.  *United States v. Shareef*, 190 F.3d 71, 77 (2nd Cir. 1999);  *United States

v. DeLeon*, 187 F.3d 60, 63 (1st Cir. 1999).  Moreover, it is not apparent that such a

Civil No. 97-1652 (HL)    19
Crim. No. 94-016 (HL)

motion would have been successful.  At the time of Reyes' trial, it was an open question as

to whether a severance was justified when, as in Reyes' case, a codefendant's offer to

testify was conditioned upon the order of the separate trials.  *See Smith*, 46 F.3d at 1231

n.3.  A number of courts had ruled that it was not.  *See United States v. Washington*, 969

F.2d 1073, 1080 (D.C.Cir. 1992); *United States v. Blanco*, 844 F.2d 344, 352-53 (6th Cir.

1988); *United States v. Haro-Espinosa*, 619 F.2d 789, 793 (9th Cir. 1979); *United States v.

Becker*, 585 F.2d 703, 706 (4th Cir. 1978).  Given the lack of a clear likelihood of success

that a motion for severance would have had, Rivera's failure to move for one was not

deficient or so inferior as to be objectively unreasonable.  Additionally, Reyes has not

shown that this testimony would have been enough to overcome the Government's

evidence against him.  Thus, he has also failed to meet the prejudice prong.  The failure to

move for severance was not ineffective assistance.


    4.    *Claims of Brady violation*

Reyes next claims that the Government failed to disclose prior to trial exculpatory

*Brady* material.  *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215

(1963).  Reyes alleges that the Government had evidence regarding Toledo's false

identifications and driver's license; her prior work as a government informant; and drug

associates of Toledo and Jeffrey Martínez, another Government witness.  Reyes argues that

this evidence could have been used to impeach Toledo.  He also claims that the

Civil No. 97-1652 (HL)                    20
Crim. No. 94-016 (HL)

Government should have disclosed evidence that Martínez attempted to murder Orlando

Romero Pérez in 1991 and that this evidence could have been used to impeach Martínez.

With regard to the evidence of Martínez' alleged attempted murder, Reyes evidence

is a sworn statement by Romero Pérez, the victim of the attack.[37]  Romero Pérez avers that

prior to the making of this statement in May 1994, he had never accused Martínez of this

act.  If the victim had never brought a formal accusation against Martínez, it is unclear how

the Government could have had information of this incident.  Thus, there could have been

no *Brady* violation regarding this evidence.

With regard to the evidence on Toledo, at the evidentiary hearing the Court ordered

the Government to produce under seal its files on her.  It has done so, and the Court has

reviewed them.[38]  The files do contain material to impeach Toledo, but this material was

presented at trial.  The Court found no new evidence in the files.  At any rate, the Court

notes that the alleged evidence which Reyes claims was withheld dealt only with her use of

false identifications and her prior involvement in drug trafficking.  Even if the Government

did have such evidence and did withhold it, there would not be a *Brady* violation.  At trial,

the defense did present evidence of Toledo's use of false identifications, fraudulent

transactions, and prior drug dealings.  The Constitution is not violated every time that the

---

[37] Civil no. 97-1652 (HL), docket no. 2, exhibit 15.

[38] Civil no. 97-1652 (HL), docket no. 31.

Civil No. 97-1652 (HL)                21
Crim. No. 94-016 (HL)

Government fails to disclose exculpatory evidence. *Kyles v. Whitley*, 514 U.S. 419, 436-37, 115 S.Ct. 1555, 1567, 131 L.Ed.2d 490 (1995). Exculpatory evidence is material, and a constitutional error results from its suppression, "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* at 433-34, 115 S.Ct. at 1565 (quoting *United States v. Bagley*, 473 U.S. 667, 682, 685, 105 S.Ct. 3375, 3383, 3385, 87 L.Ed.2d 481 (1985)); *Gilday v. Callahan*, 59 F.3d 257, 267 (1st Cir.1995). A reasonable probability of a different result is shown when the Government's suppression of evidence "'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434, 115 S.Ct. at 1566 (quoting *Bagley*, 473 U.S. at 678, 105 S.Ct. at 3381). The question is whether, in the absence of the suppressed evidence, the defendant received a trial that is "worthy of confidence." *Id.* at 434, 115 S.Ct. at 1566.

At Reyes' trial, evidence of Toledo's use of false identifications, alleged fraudulent transactions, and involvement in drug dealings was presented. The record contained fertile ground for an attack on her credibility, and Rivera did make such an attack. Unfortunately for Reyes, the jury did not find it convincing. Even if the Government did have additional evidence on these points – and there is no indication that it did – any failure by the

Civil No. 97-1652 (HL)                              22
Crim. No. 94-016 (HL)

Government to disclose it would not have undermined the confidence in the outcome of the

trial. Thus, Reyes' claim of a *Brady* violation is unavailing.[39]


     5.    *Remaining claims*

     Reyes makes two other challenges to his sentence. In one he argues for relief on the

grounds that Toledo received illegal benefits from the Government in exchange for her

testimony. In support of this argument, he cites to *United States v. Singleton*, 144 F.3d

1343 (10th Cir. 1998). The Tenth Circuit, en banc, vacated this decision, *id.* at 1361-62,

and subsequently reversed it, 165 F.3d 1297 (10th Cir. 1999). Other courts have roundly

criticized the original *Singleton* decision. *See United States v. Hunte*, 193 F.3d 173, 174

(3rd Cir. 1999) (collecting cases). Most importantly, the First Circuit has expressly

rejected its reasoning. *See United States v. Lara*, 181 F.3d 183, 197-98 (1st Cir. 1999).

     Reyes' second challenge is based on the assertion that his conviction was based on

Toledo's perjured testimony. He raised this argument on direct appeal,[40] and the First

Circuit denied it, *see Jiménez-Rodríguez*, 70 F.3d 1253, 1995 WL 709639, at *4. Thus, he

may not raise this issue here. *See Murchu*, 926 F.2d at 55.

--------------------------------

    [39] Reyes also raised this argument on direct appeal. *See* docket no. 12, Appellant brief, at
46-49. The First Circuit denied this argument. *See Jiménez-Rodríguez*, 70 F.3d 1253, 1995
WL 709639, at *5. A petitioner may not raise in a section 2255 claim an issue that was
resolved on direct appeal. *Murchu v. United States*, 926 F.2d 50, 55 (1st Cir. 1991).

    [40] Civil no. 97-1652 (HL), docket no. 12, Appellant brief, at 12-16.

Civil No. 97-1652 (HL)                  23
Crim. No. 94-016 (HL)

The overall gist of Reyes' petition is that he was denied evidence -- either by his

attorney's allegedly deficient performance or by alleged Government misconduct -- which

could have been used to impeach Carmen Toledo.  The problem with this theory is that at

trial, his defense *did* attack this witness' credibility through cross-examination and

evidence.  The fact that she was not attacked using the evidence which Reyes now, with

the benefit of hindsight, claims should have been used is not sufficient to justify the

granting of his petition.

WHEREFORE, for all of the reasons set forth above, the Court denies Reyes'

section 2255 petition.  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 2 V, 2000.

HECTOR M LAFFITTE
Chief U.S. District Judge